(85 South. 416)

**BROWN v. SHELBY COUNTY.   (7 Div. 51.)**

(Supreme Court of Alabama.   Feb. 5, 1920. Rehearing Denied May 20, 1920.)

**1. Appeal and error ☜866(1)—Appeal may be taken by plaintiff from denial of nonsuit.**

Under Code 1907, § 3017, authorizing an appeal by plaintiff who has moved for a nonsuit, with bill of exceptions, on account of adverse ruling by the court on admissions of testimony, such adverse rulings are reviewable on the appeal.

**2. Bridges ☜37 — Liability for injuries on bridges statutory.**

A county is not liable for damages for injuries resulting to travelers on highways from defective bridges and causeways, in the absence of a statute fixing liability.

**3. Bridges ☜39(5)—Liable for injuries received by reason of defect in bridge constructed by contractor without guaranty.**

A county is liable for damages for injuries to a traveler by reason of a defect in a bridge erected by contract without guaranty, under Code 1896, § 2512, as amended by Gen. Acts 1903, pp. 412–414, §§ 6, 8, as affected by Code 1907, § 3038, and such is true where guaranty has been required but the period has expired.

**4. Evidence ☜333(12)—Minutes of court of county commissioners admissible to show construction of bridge by independent contractor.**

In an action for injuries caused by defective bridge, minutes of court of county commissioners reciting indebtedness to a construction company for the erection of the bridge, and providing for levy of a special tax to pay for the same, were competent as tending to show that the bridge was erected by the authority of the board of county commissioners, and by such independent contractor pursuant thereto.

**5. Bridges ☜8—County commissioners could establish bridges at a time other than a regular term of court.**

Under Code 1896, § 2512, as amended by Gen. Acts 1903, pp. 412–414, §§ 6, 8, as affected

by Code 1907, § 3038, courts of county commissioners may establish bridges at a time other than the regular term of the court as provided by statute.

**6. Bridges ⊙⇒20(3)—Commissioners could ratify letting of contract for bridge by two members.**

Though a county had not the authority to delegate the power to two members of its court of county commissioners to make a contract for the construction of a bridge under Code 1896, § 2512, as amended by Gen. Acts 1903, pp. 412–414, §§ 6, 8, as affected by Code 1907, § 3038, when their action in letting the contract was reported by them to such court and was made a part of its record by adoption or ratification thereof, it became effective.

**7. Evidence ⊙⇒333(12) — Contract for bridge admissible though not entered at length on minutes of commissioners.**

Though a contract for the construction of a bridge under Code 1896, § 2512, as amended by Gen. Acts 1903, pp. 412–414, §§ 6, 8, as affected by Code 1907, § 3038, was not entered at length on the minutes of the court of county commissioners, it was admissible as evidence tending to show that the bridge was built by the county by contract with an independent contractor, though such instrument was executed by only two members of the court and was subsequently ratified by the court.

**8. Evidence ⊙⇒178(8)—Stubs of county warrants admissible where warrants were lost.**

Where original canceled warrants of county could not be found by diligent search in the place where the same were usually kept by the proper custodian thereof, court should have admitted in evidence, after such preliminary proof was made, the county book containing stubs of such warrants.

**9. Evidence ⊙⇒387(5) — Opening bridge for public use matter of parol proof.**

In an action against a county for damages for injuries caused by defect in bridge, the fact that the bridge after completion was opened by the county for the use of the public, the county's exercising jurisdiction and control over the same, repairing it at various times, and finally negligently permitting it to become in a dangerous or defective condition, was matter of parol proof.

**10. Bridges ⊙⇒39(5)—Failure of minutes of commissioners to show formalities of establishment held not to affect liability for injuries.**

The fact that the minutes of the court of county commissioners failed to show the observance of provisions as to advertising for competitive bids for the construction of a bridge, or the bond of indemnity for faithful performance of the work or plans and specifications, or for protection of the traveling public, did not absolve the county from liability for injuries to traveler by reason of defect in bridge, where no guaranty was taken or the period had expired, under Code 1907, § 3038.

Appeal from Circuit Court, Shelby County; Hugh D. Merrill, Judge.

Action by Fannie Brown against Shelby County for damages for personal injuries. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Longshore, Koenig & Longshore, of Columbiana, and Arrington & Arrington, of Montgomery, for appellant.

Portions of the minutes of the June and July term of 1905 of the commissioners' court, offered as evidence, should have been admitted. 119 Ala. 601, 24 South. 505; 137 Ala. 158, 34 South. 171; 185 Ala. 504, 64 South. 311; 193 Ala. 529, 68 South. 971; 197 Ala. 313, 72 South. 636. The contract could be ratified. 175 Ala. 391, 57 South. 823; 15 Corp. Jur. 554. The contract of June 20, 1905, was admissible. 81 Ala. 216, 1 South. 74. It is the duty of county boards to take a bond of guaranty from a contractor building a county building. Section 2512, Code 1896; 125 Ala. 390, 27 South. 977; 80 Ala. 207.

W. L. Acuff, of Columbiana, and J. J. Mayfield, of Montgomery, for appellee.

The contract entered into was void, because no bond was taken. Acts 1903, p. 413. Being void, it cannot be ratified. 9 Ala. 198; 32 Ala. 288; 93 Ala. 503, 9 South. 596; 54 Miss. 668; 59 Cal. 517; 77 N. Y. 130; 48 Ala. 575. No action lies against the county, unless the bridge was erected under a valid and legal contract. 116 Ala. 378, 22 South. 545; 54 Ala. 639, 25 Am. Rep. 730. The orders, etc., of the commissioners' court were not admissible. Sections 955, 3970, 3979, 3985, Code 1896; 20 Ala. 446; 18 Ala. 694; 137 Ala. 155, 34 South. 171; 186 Ala. 611, 65 South. 163; 195 Ala. 336, 70 South. 259; 113 Ala. 626, 21 South. 135; 146 Ala. 455, 41 South. 619. On these authorities, the court properly refused to admit the other evidence complained.

THOMAS, J. This is a suit to recover damages for personal injuries, alleged to have been received by plaintiff by reason of a mule becoming frightened at a hole in the floor of a bridge and backing therefrom with a buggy attached in which plaintiff was riding.

[1] The appeal is taken as authorized by section 3017 of the Code of 1907, plaintiff having moved for a nonsuit with bill of exceptions, on account of adverse ruling by the court on the admission of testimony. Schillinger v. Wickersham, 75 South. 11;[1] Herrmann v. Mobile Co., 202 Ala. 274, 80 South. 112; Paterson & Edey Lbr. Co. v. Bank of Mobile, 203 Ala. 536, 84 South. 721.

The suit is brought under the provisions of section 2512 of the Code of 1896 as amended by sections 6 and 8 of the Act of October 10, 1903 (Gen. Acts 1903, pp. 412,

413, 414), and as affected by section 3038 of the Code of 1907.

The statute, without amendment, as embraced in the respective Codes since 1852, is as follows:

"When a bridge or causeway has been erected by contract with the county commissioners, with a guaranty, by bond or otherwise, that it shall continue safe for the passage of travelers and other persons for a stipulated time, any person injured, in person or property, before the expiration of such period, by a defect in such bridge or causeway, may sue in his own name on the bond or other guaranty, and recover damages for the injury; and if no guaranty has been taken, or the period has expired, may sue and recover damages of the county." Code of 1896, § 2512.

The trial was had on count B, in which it is averred that about the 20th day of June, 1905, the court of county commissioners of the county in question contracted with B. C. Bynum Construction Company for the building of a bridge across a designated creek on a public highway of the county; that the same was so constructed by the independent contractor; and it is averred that the county failed to take a bond or guaranty from said construction company that said bridge "should continue safe for the passage of travelers and other persons for any stipulated time, and by reason thereof it then and there became the duty of the defendant to keep said bridge in repair and in safe condition for the passage of travelers and other persons. * * * That prior to and on, to wit, the 3d day of October, 1917, the defendant negligently suffered or allowed said bridge to be in an unsafe, unsound, and defective condition, which said unsafe, unsound, and defective condition consisted in this: A large hole in the floor of said bridge, which said hole was, to wit, twelve inches wide and, to wit, twenty-four inches long; and * * * that defendant for, to wit, several days prior to said date last aforesaid and prior to the occurrence of the injuries hereinafter complained of had notice of said unsafe, unsound, and defective condition of said bridge, and * * * that defendant after it had said notice at the time aforesaid had reasonable time in which to remedy said unsafe, unsound, and defective condition of said bridge, but negligently allowed the same to remain in said unsafe, unsound, and defective condition., Plaintiff further avers that on, to wit, said 3d day of October, 1917, whilst plaintiff was crossing or attempting to cross said bridge in a buggy drawn by a mule, in which buggy she was riding at said time at the invitation of the driver thereof who at said time was driving and in control of said mule and buggy, the said mule became frightened at said hole in the floor of said bridge, which said hole was one calculated to frighten mules of ordinary gentleness, and said mule by backing with said buggy, in consequence of said fright, suddenly backed one or more of the wheels of said buggy over, to wit, the abutment of said bridge, throwing plaintiff out and from said buggy to the ground below, thereby causing her serious and permanent bodily harm," catalogued in the count. It is further averred that an itemized claim of damages, duly verified as required by law, was filed with the board of revenue of the county on April 9, 1918, within 12 months after plaintiff sustained her injuries, which claim was disallowed by the said board of revenue on May 22d of said year.

As respects the county's liability for injuries sustained to person or property on defective bridges or causeways as a part of highways within the county, rendered unsafe for the passage of travelers thereupon, there are four classes: (1) Those not erected or constructed by the county for which no liability is fixed by statute; (2) those erected or constructed by the county without the intervention or agency of an independent contractor, for which no liability is fixed by statute; (3) those erected or constructed by contract with the county commissioners "with a guaranty, by bond or otherwise, that it shall continue safe for the passage of travelers and other persons for a stipulated time," and such period has expired (without regard to the length of the period), in which event the statute declares that the party so injured may recover damages of the county; and (4) when the bridge or causeway was erected or constructed "by contract" and no guaranty has been taken by the county, in which case recovery of damages may be had of the county.

[2] It is immaterial to this inquiry that the statute did not provide liability for defective construction or the failure of maintenance in classes 1 and 2, or that the liability fixed in classes 3 and 4 was without time limitation as to the county's statutory liability, and may be coextensive with the life of the bridge or causeway in question. The subject is purely of statutory origin. If liability of a county for damages for injuries resulting to travelers on the highways from defective bridges and causeways is not fixed by statute, no such liability exists. Lee County v. Yarbrough, 85 Ala. 590, 5 South. 341; Williams v. Stillwell, 88 Ala. 332, 6 South. 914; Mobile County v. Maddox, 195 Ala. 336, 70 South. 259, L. R. A. 1916D, 511, 513.

This announcement is in consonance with the construction given section 2512 of the Code of 1896 (section 3038 of the Code of 1907) in Barks v. Jefferson County, 119 Ala. 600, 24 South. 505, where the inquiry was made:

"Can the county be held liable for injuries resulting from the falling of a bridge erected by the court of county commissioners, on a

road not a public road, when no guaranty was taken as provided in section 2512 of the Code?" conceding that the road was not a public road.

The holding was that the court of county commissioners had original legislative and judicial power, with reference to the establishment of county bridges, untrammeled by statute conferring jurisdiction; that, in the exercise of a wide discretion for the convenience of the public, such constituted authority of the county may exercise its discretion in the establishment and construction of a bridge and the levy of a special tax provided by statute therefor; that the county was liable for personal injuries caused from such defective bridge erected under contract with the commissioner's court on a road not a public road, where the guaranty bond required by statute was not taken.

So much for the statutes and constructions given when the bridge in question was erected in 1905. The act of October 10, 1903, "to provide for the construction and maintenance of good public roads and bridges in the several counties of the state of Alabama," provided for securing rights of way by sale, donation, or condemnation; the width of the road of the several "classes" was declared; provision made for connecting the roads of the different counties at the expense of the counties in interest, to be determined by joint meeting of the courts of county commissioners or boards of revenue of said adjoining counties, and for the payment of the expense of the same; for the employment of necessary labor for the location, construction, improvement, and maintenance of the public roads and the payment therefor from the special road and bridge fund set apart for such internal improvement or out of "any other funds of said county"; that the county may be divided by said court into road districts; the making of such improvements by the labor of county convicts was authorized; and the power given to levy "a tax on all the property of their respective counties of not more than one-fourth of one per centum of the value of such property which tax when collected shall be used exclusively for the purpose of paying any debt or liability incurred for the construction, erection or maintenance of the necessary public buildings, bridges or roads of the county, which tax shall be assessed and collected as other county taxes are collected and in cases where bonds of the county may have been issued, to the payment of the interest and principal of such bonds." Section 7, p. 414. This act further provided:

"That for the purpose of constructing, improving and maintaining the public roads and bridges of their respective counties, the various courts of county commissioners or boards of revenue may either do such work themselves or employ contractors to do the same in whole or in part, and whenever the construction, improvement or maintenance of the public roads or bridges of a county is to be done by independent contractors it shall be the duty of the various courts of county commissioners or boards of revenue to require of the person or corporation with whom such contracts are made, the execution of a bond in sufficient amount and with solvent sureties, conditioned to construct, improve, or maintain such roads and bridges, in a good and safe condition, for the full term for which said contract runs. Such bond must be payable to the judge of probate of the county in which such roads and bridges are located, and must be filed and recorded in the office of the probate judge. Any person injured by any breach of said bond shall have the right to bring suit thereon in his own name against the principal and sureties on such bond to recover damages for such injury as he may have sustained, by reason of such breach of such bond." Section 6.

The act further provided that—

"No contract shall be made except after advertisement for thirty days in some newspaper published in the county accurately describing the character of work to be done and of the time and place of letting and then only to the lowest bidder for such work, who shall enter into bond in double the amount of such bid conditioned for the proper performance of said contract according to the plans and specifications and within the time prescribed by the order of the court for such work which bond shall be approved by the judge of probate for said county." Section 8, Gen. Acts 1903, pp. 412, 415.

[3] It is apparent that it was the legislative intent to provide an expansive system for the construction and maintenance of good public roads, by authorizing the county to provide the necessary funds to make such internal improvement in whole or in part through its municipal agencies—county convicts or the employment of laborers or otherwise—or through an independent contractor after competitive bids of which due advertisement was required to be given. Many provisions of chapter 59 of the Code of 1896 were unaffected by the provisions of said act. It was not the intent, nor does the act purport to deal anew with the whole subject of highways, bridges, causeways, and ferries, and many of the statutory provisions relating thereto were unaffected. The act did not repeal the statutory provision that where no guaranty has been taken by the county from an independent contractor constructing or maintaining a county's bridge or causeway, or where the period of guaranty has expired, where any person injured, in person or property, by reason of the highway or that portion thereof being or becoming unsafe for the passage of travelers thereover or thereupon, damages may be recovered of the county.

The question now presented is whether the county was subject to this statutory lia-

bility when the bridge in question was erected in 1905 for the county on its public highway, and at the time when the injury was sustained—though certain statutory requirements were not shown by the minutes of the court of county commissioners to have been complied with—where the contract for its erection was ratified by the court of county commissioners, the structure was completed, accepted, paid for, and opened to the public by the county. •

[4, 5] That part' of the minutes of the court of county commissioners, June term, 1905, reciting indebtedness to Bynum Construction Company for the erection by that company, for the county, of the public bridge in question, and providing for the levy of a special tax to pay for the same, was competent as tending to show that the bridge was erected by authority of the court of county commissioners and by such independent contractor pursuant thereto. The June term of court was the time fixed by law (Code 1896, §§ 3977, 3985) for the levying of taxes. The order of July 3, 1905, showing adoption or ratification of the contract in question, made for the court by two of its members, was likewise competent evidence. Matkin v. Marengo County, 137 Ala. 155, 158, 34 South. 171. In Com. Ct. of Coffee Co. v. Ballard, 185 Ala. 501, 64 South. 311, speaking of the term of courts of county commissioners or boards of revenue in which is vested executive, legislative, and judicial power in the establishment of public or private roads, it is said that such courts may establish such roads at a time other than the regular terms of the court as provided by statute; that is to say, the exercise of such power is not restricted to regular terms of said court. This decision is in line with the pronouncement contained in Barks v. Jefferson County, supra, that commissioners' courts exercise an original quasi legislative, judicial, and executive power under the Code of 1896 to establish bridges, and it follows that such courts in dealing with the establishment of roads, bridges, ferries, and causeways, were not restricted to their regular terms. Hicks v. State, 16 Ala. App. 88, 75 South. 636.

[6, 7] Though the county had not the authority to delegate the power to two members of its court of county commissioners to make the contract in question, when their action in letting the contract was reported by them to such court and was made a part of its record by adoption or ratification thereof, it became effective under the statute we are dealing with. Though the contract was not entered at length on the minutes of the court, such instrument so ratified by the court of county commissioners was admissible as evidence tending to show that the bridge was built by the county and by contract with an independent contractor. Williams v. Colbert County, 81 Ala. 216, 1 South. 74; Franklin County v. Richardson,

202 Ala. 46, 79 South. 384. The right of ratification of authority for the erection of a county bridge by the authoritative action of the court of county commissioners and shown by its written record was recognized in Mobile County v. Maddox, 195 Ala. 336, 70 South. 259. The result there announced that a probate judge, a member of the county board of commissioners, cannot invest with validity an incomplete act of the board or unauthorized act of its individual members, by issuing a warrant in payment; for the act only of a member of such court was properly held to be no ratification of an unauthorized contract for the building of a bridge and afforded no basis for the statutory liability in question.

[8, 9] It being shown that the original canceled warrants of the county by which payment was made for the bridge could not be found by diligent search in the place where the same were usually kept by the proper custodian thereof, the county book containing stubs of such warrants issued in payment of the construction price of the bridge should have been admitted in evidence after such preliminary proof was made. McWhorter v. Tyson, 83 South. 330.[2] The tendency of the stubs was to show that the bridge was erected by an independent contractor and paid for by the county; and this without regard to the fact that the original or initial stages of the contract or of its execution were made by a committee from the court of county commissioners intrusted with such matter by the court of county commissioners, thereafter reported to the court by such committee and ratified by the court as shown by its minutes. The fact that the bridge, after completion, was opened by the county for the use of the public and the county's exercising jurisdiction and control over the same, repairing it at various times throughout the year, and finally negligently permitting it to become in a dangerous or defective condition, was matter of parol proof. Greene County v. Eubanks, 80 Ala. 204.

[10] The fact that the minutes of the court of county commissioners fail to show the observance of such provisions as to advertising for competitive bids for the work or a bond of indemnity for faithful performance of the work according to plans and specifications or for protection of the traveling public did not absolve the county of liability imposed on it by the statute, where "no guaranty has been taken, or the period has expired." Code, § 3038 (2512), (1456), (1692), (1396), (1203).

The judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.

---

2 203 Ala. 509.